# UNITED STATES DISTRICT COURT
for the
Eastern District of California

| | |
|---|---|
| FILED | |
| Sep 29, 2022 | |
| CLERK, U.S. DISTRICT COURT EASTERN DISTRICT OF CALIFORNIA | |

United States of America )
v. )
DEVIN MICHAEL CUELLAR )   Case No. 6:22-mj-00018-HBK
)
)
)
)
_Defendant(s)_

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __May 27 to August 19, 2021__ in the county of __Mariposa__ in the __Eastern__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1), (g)(3); | Knowingly possessing firearm/ammunition - penalties: 10 years/$250,000 fine; |
| 26 U.S.C. § 5861(d); | Knowingly possessing short-barreled shotgun - penalties: 10 years prison/$10,000 fine; |
| 18 U.S.C. § 1363; | Willfully destroying property - penalties: 5 years prison/$250,000 fine; |
| 18 U.S.C. § 661; | Carry away, with intent to steal or purloin, any personal property (in excess of $1,000) of another - penalties: 5 years prison/$250,000 fine; |
| 18 U.S.C. § 1001(a)(2). | False statement - penalties: 5 years prison/$250,000 fine |

This criminal complaint is based on these facts:
See Attached Affidavit, attached hereto and incorporated herein by reference.

☑ Continued on the attached sheet.

_Complainant's signature_

Heidi L. Edgecomb, Ranger, Yosemite National Park
_Printed name and title_

Sworn to before me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 4(d).

Date: 9/29/2022 at 3:09 pm

_Judge's signature_

City and state: Yosemite National Park    HELENA BARCH-KUCHTA, U.S. Magistrate Juge
_Printed name and title_

## AFFIDAVIT IN SUPPORT OF COMPLAINT

I, Heidi L. Edgecomb, being duly sworn, hereby declare as follows:

### I.      INTRODUCTION

**A.     Purpose of the Affidavit**

1.     This Affidavit is made to support a complaint charging **Devin Michael CUELLAR** ("**CUELLAR**"), with, knowing that he had been convicted of a crime punishable by imprisonment for a term exceeding one year and knowing of his status as a drug addict and user, knowingly possessing a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1) and (g)(3); knowingly possessing a short-barreled shotgun, in violation of 26 U.S.C. § 5861(d); willfully and maliciously destroying property of another, a dwelling, in violation of 18 U.S.C. § 1363; carry away, with intent to steal or purloin, any personal property (in excess of $1,000) of another, in violation of 18 U.S.C. § 661; and knowingly and willfully making a false statement, in violation of 18 U.S.C. § 1001(a)(2).

**B.     Agent Background**

2.     I am a Supervisory United States Park Ranger with the National Park Service, United States Department of the Interior (DOI), currently assigned to the Wawona Ranger District in Yosemite National Park and have worked as a field ranger there for approximately fourteen years.

3.     I am a designated officer or employee of the United States within the meaning of Title 54, United States Code, Section 102701(a)(1), that is, an employee of the Department of the Interior who is empowered by law to make arrests, execute warrants and other process, and conduct investigations to maintain law and order and protect persons and property within areas of the National Park System.

4.     I have a Bachelor of Science degree in recreation management from Ferris State University. I am a graduate of the Seasonal Law Enforcement Training Program (SLETP) at Northern Arizona University in Flagstaff, Arizona; Land Management Investigator Training Program at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia; and the Land Management

Police Training Program at the FLETC.  While attending SLETP and FLETC, I received training in conducting burglary, vandalism, financial, narcotics, and fraud-based investigations as well as asset forfeiture, undercover operations, and physical and electronic surveillance operations.  During my tenure with the NPS, I have investigated a variety of crimes on NPS lands, including burglaries, vandalism, fraud, weapons, and drug-related violations.  I have assisted and/or planned in the execution of warrants to search particular places, premises and persons that included electronic devices and data. I have written reports and analyzed records and documents in conjunction with the preparation of affidavits requesting authorization for the execution of search and arrest warrants and I have authored, planned, and executed said warrants.

   5. My investigative experience includes conducting physical surveillance; interviewing witnesses, victims, and suspects; writing affidavits for, and executing search and arrest warrants; analyzing phone records obtained from subpoenas and search warrants; and collecting and processing evidence. Through my training and experience as a law enforcement officer I have become familiar with illegal drug and weapon violations.

   6. I have personally participated in the investigation set forth below.  I am familiar with the facts and circumstances of the investigation through my personal participation; from discussions with other law enforcement officers; from my review of records and from debriefings of other witnesses.  Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided by another law enforcement officer or witness who may have had either direct or hearsay knowledge of that statement and to whom I or others have spoken or whose reports I have read and reviewed.  Such statements are among many statements made by others and are stated in substance and in part unless otherwise indicated.

## II.   PROBABLE CAUSE

7.   On August, 30, 2021,[1] K.S. arrived at her privately-owned vacation home in the town of Wawona, County of Mariposa, within the Eastern District of California, to find her home unsecured. She found many pieces of furniture, clothing, tools, drug paraphernalia, and other personal effects strewn throughout the kitchen, living room, hallways, bedrooms, bathrooms, and yard of the home.  The kitchen of the property contained food, used dishes, and garbage. K.S. had last visited her property in late April or early May and had left the property emptied of personal effects, clean, and locked.

8.   K.S.'s residence is located on a privately-owned parcel in township Section 35 of Mariposa County, within the special maritime and territorial jurisdiction of the United States, namely Yosemite National Park.  From May 21 to September 30, 2021, all visitors to Yosemite National Park were required to have either a day-use reservation or a permit signed by a resident or property owner authorizing access to their property.

9.   On August 30, 2021, Ranger Zane Kesceker and I arrived at the property and were met by K.S. and her partner, S.M.  Upon arriving at the property, I saw two sport utility vehicles parked on the eastern side of the house with the hoods up and vehicle parts on the ground nearby.  I also saw numerous beverage containers, food packaging, and other garbage strewn about the yard and the forested areas surrounding the home.  I saw electric lights which were partially discarded alongside the driveway.  I saw three outbuildings, two of which appeared to have been opened and some items had been removed.  There was also a camper trailer parked in the yard, which appeared to have been opened.  On the attached deck of the home, I saw several gasoline cans, some tools, and additional electrical items which appeared to have been dropped in the yard without purpose.

10.   K.S. said that, when she last left the property, the vehicle hoods had been closed, all outbuildings had been closed, and no items were left unsecured.  She said she had photographed the

---

[1] Any and all references herein to dates and times are to approximate dates and times.

AFFIDAVIT 3

cabin prior to leaving and these photographs verified the stated condition of the property at her last visit. K.S. indicated that K.S., S.M, and K.S.'s two daughters, A. and K., were the only authorized users of the property and that none of them had been there since K.S. had left in April or May. When she left all doors had been locked.

11. K.S. and S.M. had begun cleaning the house prior to calling law enforcement. They had removed three or four laptop computers, some tools and tool batteries and a few other items from inside the home and placed on the deck outside. They showed me these items. S.M. also stated there were items he could identify as from Wawona Hotel, such as toilet paper. S.M. said there was a motorcycle helmet inside the home. Before I left the property, these items were returned to the locations inside the residence where K.S. and S.M. had found them.

12. Upon entering the house, I saw garbage on the floor throughout the house. In the living room, an air mattress and bedding was set up. A couch was present in the living room, as well as clothing, shoes, and other articles of men's and women's clothing and accessories. Several commercial-type lights, such as those used for growing plants or lighting construction sites, had been left in the bedrooms and other personal items, including a purse, backpack, clothing, and motorcycle helmet were also present. The kitchen of the home had piles of used dishes, unfinished food, beverage containers, and utensils stacked on the counter and in the sink. The entire house was cluttered and soiled. The bathtub had been left partially filled with water and the toilet contained large clumps of hair. An ashtray containing numerous cigarette butts and ashes was left on a table in a small bedroom adjacent to the bathroom, and partially burned candles were also there.

13. On September 7, 2021, Yosemite National Park Rangers executed a search warrant on the property. During execution of the warrant, I discovered an envelope containing mail from the County of Madera Health and Human Services/Department of Social Services and Covered California addressed to **Devin CUELLAR**. Contained in the same envelope was an employee handbook from The Pines Resort

in Bass Lake.  I also discovered a bottle of Lucerne coffee creamer, a tub of "I Can't Believe It's Not Butter" and two packages of tortillas in the refrigerator labeled "**Devin**."  Each of these items were fresh, not moldy or spoiled.  I also discovered a notebook labeled with a name which K.S. believed was a juvenile named S.R., an acquaintance of K.S. from several years ago.

14. Rangers also discovered items known to be stolen, including a set of golf clubs, cleaning supplies, tools, and a gasoline can. These items had been the subject of previous law enforcement reports taken for stolen property around the beginning of June 2021.

15. On July 3, 2021, a custom SFGC gray club bag containing 14 golf clubs, including a Taylor putter, 3 irons, drivers and woods that had been reported stolen from in or near room 106 at the Wawona Hotel. The golf bag and several of the clubs were recovered during the search of the property. The replacement cost of these items is estimated at $1,420.00.

16. In early July 2021, a local resident, M.H., approached me and stated a gasoline can had been taken from the front porch of his store in Wawona.  He identified the gas can as a faded red 2.5 gallon rectangular container with a yellow spout and a yellow vent cap. This item was located along the northern exterior wall of K.S.'s property when the search warrant was executed and M.H. identified the gas can as his.  The replacement cost of this item is estimated at $25.00

17. In September 2021, Wawona Hotel employees confirmed a porter's closet had been emptied in late June or early July of toilet tissue, paper towels, Windex, bathroom floor cleaner, disinfectant cleaner, and Lemon Lift product. The Wawona Hotel Housekeeping Manager confirmed the products were consistent with the brand, package sizes, and products stored in the emptied porter's closet.  During the execution of the search warrant at K.S.'s residence, officers found several lists and notes, including one dated June 27, 2021 entitled Household Items.  Included on this list was "comet, liquid toilet cleaner, floor cleaner, air freshener."  This note was in handwriting similar to that found in

AFFIDAVIT 5

the notebook belonging to S.R. Several of these items were recovered during the search of the property. The replacement value of these items is estimated at $80.00.

18. During an interview with employees of an electrical contractor working at the Wawona Hotel in 2021, several items were identified as missing from the project site. These items included, among others, DeWalt drills and batteries and a Greenlee green-handled ratchet cutter. Items matching these were recovered during the search of K.S.'s residence. The estimated replacement cost of these items is $850.00.

19. On September 28, 2021, during a general patrol, I discovered K.S.'s property unsecured with a sliding glass door open. I entered the property and found it unoccupied. Written in five locations on the walls of the entry hallway, kitchen, and refrigerator in purple ink were derogatory epithets. K.S. ultimately needed to repaint the interior of these rooms to cover over the vandalism.

20. In addition, Rangers found the following items within the residence: (1) seven plastic baggies containing white powder residue; (2) a glass pipe consistent with those used to smoke methamphetamine or heroin;(3) five foil squares with burned residue often used for smoking drugs; and (4) three unspent 12-gauge buckshot ammunition rounds.

21. On October 13, 2021, K.S. called me advising she had found a gun, which did not belong to her, in the living room closet of the Wawona property. Ranger Kyle Strand and I met K.S. at the property and seized the firearm, a modified J.C. Higgins model 20, 12-gauge shotgun with no identifiable serial number. The shotgun had been modified to shorten the barrel and the stock to an overall length of less than twenty-six inches. The shotgun was loaded with three bullets in the magazine tube. This shotgun had several distinct identifying characteristics: (1) the safety had been removed; and (2) the right-hand side (when holding the firearm with the barrel pointed away from one's body) had several distinct round areas of damage resembling bullseyes where the bluing had been worn away, leaving a circle of silver metal on the barrel and magazine tube. The Resident Agent in Charge of the Fresno Office of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) advised that the

aforementioned firearm and ammunition had been manufactured outside of the State of California. In addition the firearm is not registered to **CUELLAR**. Because K.S. had identified the closet as containing items belonging to her, the closet in question had not been searched during execution of the search warrant on September 7, 2021.

22. An examination of utility records for the property showed an increase in electricity usage for the property from May 20 to June 18, 2021. The home, being empty, had shown a fairly steady pattern of electricity usage in April and May, and an increase after May 27, 2021, which continued through the bill dated August 19, 2021. Madera County Jail records show **CUELLAR** was released from state custody for a parole violation, possession of a controlled substance, possession of paraphernalia, and a California Vehicle Code violation on May 25, 2021 and re-arrested on August 20, 2021 for a parole violation, prohibited possession of ammunition, and possession of paraphernalia.

23. On December 9, 2021, Ranger Justen Williams and I conducted an interview of **CUELLAR**. **CUELLAR** said he "[hadn't] been in Wawona in years." The last time he could recall being in Wawona he was living with K. (K.S.'s daughter) in 2017. **CUELLAR** had "no idea" how his mail had gotten into the house, stating his personal belongings had been stolen in Bass Lake. **CUELLAR** said that, starting in late May through July or August, he had worked for about a month and a half at Ducey's, which is a bar at The Pines Resort in Bass Lake. **CUELLAR** later stated, "From my knowledge, what I remember . . . I wasn't in the right state of mind sometimes this past year, drinking and stuff like that. From the best of my knowledge, from what I remember it's been a while." When asked if it was possible he ended up in Wawona without realizing it, he said he "[hadn't] had any intention of going up there in a long time" and could not "recall being up there." When I asked when **CUELLAR** had been in Wawona with S.R., he stated, "I haven't been. Never." He also indicated that he had not been in Wawona at all last summer. He further indicated that he had not been to the cabin "in a while" and stated, "I haven't been at the cabin ever with S.R."

24. On February 7, 2022, Ranger Justen Williams and I conducted an interview with the juvenile accomplice of **CUELLAR**, S.R.. S.R. stated she knew the daughter of K.S. and admitted that she and

AFFIDAVIT 7

CUELLAR had stayed at K.S.'s property in Wawona between May 2021 and August 2021. S.R. stated that she had used drugs while at the property and that CUELLAR had been "tweaking" while there. S.R. stated CUELLAR was smoking both methamphetamine and heroin while at the property. S.R. stated she and CUELLAR went to Wawona Hotel to use the wireless internet on more than one occasion while staying at the cabin. S.R. also stated she had made a grocery list while at the cabin. S.R. further acknowledged that she maintained a notebook while staying at the cabin.

25. On November 23, 2021, CUELLAR was arrested by a California State Parole agent for violation of his parole release conditions. During a search incident to his arrest, the agent found one TracFone cellular phone in CUELLAR's right front pants pocket. The agent took possession of the phone.

26. Pursuant to the execution of a federal warrant authorizing a search of the contents of the phone, I found that most of CUELLAR's communication occurred via third-party apps. This was further confirmed during interviews with CUELLAR and S.R..

27. On April 8, 2022, Meta Platforms, Inc produced 605 pages of data from CUELLAR's Facebook account, **facebook.com/dmc420**, with vanity name "Raider Rx," pursuant to a search warrant issued on March 16, 2022. In conducting the search of this data, I found in plain view two photographs containing firearms. One of the firearms depicted is a short-barreled shotgun with several bullseye-type markings on the barrel and magazine tube consistent with those on the firearm seized on October 13, 2021 from K.S.'s residence, as described herein.

28. On February 15, 2022, a fingerprint analyst of the California Department of Justice Bureau of Forensic Services found that one latent print impression which had been located on a window used to enter K.S.'s property matched a known print of CUELLAR's left palm.

29. During the course of my investigation, I became aware that CUELLAR is a known member of the Norteño gang and is a habitual user and purchaser of controlled substances, including methamphetamine, heroin, and marijuana. CUELLAR told me he is a habitual user of "all of it" but mainly methamphetamine. CUELLAR's parole agent confirmed his status as a gang member.

30.     On August 30, 2022, State of California Department of Justice Bureau of Forensic Service Forensic produced a report confirming that DNA evidence provided "very strong support" that **CUELLAR** was one of the contributors to DNA evidence present on the shotgun.  The DNA mixture obtained from the shotgun was "250 quintillion times more likely" to be observed if S.M., **CUELLAR** and one unknown subject were contributors to the sample, indicating very strong support **CUELLAR** had possessed the weapon.

31.     A review of all available criminal indices, to include the National Crime Information Center ("NCIC") and the National Law Enforcement Telecommunications System ("NLETS"), indicates that **CUELLAR** is a convicted felon and is therefore prohibited from possessing firearms and ammunition.

32.     Specifically, on February 28, 2018, **CUELLAR** was convicted in Case No. MCR056829A in the Superior Court of California, County of Madera, for the offense of carjacking, in violation of Section 215(a) of the California Penal Code.  For this offense, **CUELLAR** was sentenced to 246 days in jail and 3 years' probation.

33.     In addition, on November 5, 2019, **CUELLAR** was convicted in Case No. F18903317 in the Superior Court of California, County of Fresno, for the offense of possession of a controlled substance for sale. in violation of Section 11360(a)(2) of California Health and Safety Code.  For this offense, **CUELLAR** was sentenced to 2 years and 8 months in custody.

### IV.     REQUEST TO SEAL

34.     Because this investigation is ongoing, disclosure of this affidavit could jeopardize the progress of the investigation, cause CUELLAR to flee, and jeopardize the safety of witnesses and/or law enforcement personnel.  Accordingly, I request that the Court issue an order that this complaint be filled under seal until further order of the Court. I also request that notwithstanding the Court's sealing order, the U.S. Attorney's Office be permitted to obtain and keep copies of the sealed documents from the Clerk of the Court and share them with law enforcement agencies within or outside the United States as necessary to apprehend the defendants and/or to further the investigation.

### III.     CONCLUSION

35. Based on the foregoing, I submit that there is probable cause to believe that **Devin Michael CUELLAR**, knowing that he had been convicted of a crime punishable by imprisonment for a term exceeding one year and knowing of his status as a drug addict and user, knowingly possessing a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1) and (g)(3); possessing a short-barreled shotgun, in violation of 26 U.S.C. § 5861(d); willfully and maliciously destroying property of another, a dwelling, in violation of 18 U.S.C. § 1363; carry away, with intent to steal or purloin, any personal property (in excess of $1,000) of another, in violation of 18 U.S.C. § 661; and knowingly and willfully making a false statement, in violation of 18 U.S.C. § 1001(a)(2), and request the issuance of an arrest warrant for these crimes.

_____
HEIDI L. EDGECOMB
Law Enforcement Park Ranger
Yosemite National Park

Affidavit submitted to me by reliable electronic means and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 4(d) this 29th day of September 2022.

_____
HELENA BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

Approved as to form

 /s/ Karen A. Escobar
KAREN A. ESCOBAR
Assistant U.S. Attorney

AFFIDAVIT                                        10